No. 23-1826

# United States Court of Appeals for the Third Circuit

———————————

IN RE: OFFICIAL COMMITTEE OF TALC CLAIMANTS,

*Petitioner.*

———————————

On Petition for Writ of Mandamus to the United States Bankruptcy Court
for the District of New Jersey, No. 23-12825, Adv. Pro. No. 23-01092

———————————

## RESPONSE TO THE PETITION FOR A WRIT OF MANDAMUS

———————————

GREGORY M. GORDON
BRAD B. ERENS
DAN B. PRIETO
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
(214) 220-3939

NOEL J. FRANCISCO
C. KEVIN MARSHALL
DAVID S. TORBORG
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939

May 8, 2023

*Proposed Counsel for Respondent-
Debtor LTL Management LLC*

## CORPORATE DISCLOSURE STATEMENT

The direct and indirect parent corporations of LTL Management LLC ("LTL") are DePuy Synthes, Inc.; Janssen Pharmaceuticals, Inc.; Johnson & Johnson Holdco (NA) Inc.; Johnson & Johnson International; Johnson & Johnson. Johnson & Johnson, through subsidiaries, holds 10% or more of LTL Management LLC's stock. There is no publicly held corporation which is not a party to the proceeding before this Court but which has a financial interest in the outcome of the proceeding.[1]

The proposed legal representative for future talc claimants is Randi S. Ellis. The members of the Official Committee of Talc Claimants (and their individual tort-system lawyers) are listed below.

    1. Tonya Whetsel
    c/o Karst Von Oiste LLP
    Attn: Erik Karst, Esq.
    23923 Gosling Rd., Ste. A
    Spring, TX 77389

    2. Blue Cross Blue Shield of Massachusetts
    c/o Hill Carter Franco Cole & Black, PC
    Attn: Elizabeth Carter, Esq.
    425 Perry Street
    Montgomery, AL 36104

---

[1] The preliminary injunction issued by the Bankruptcy Court enjoins talc-related claims against identified non-debtor third parties, some of which are publicly held corporations. Those claims seek to hold such third parties responsible for LTL Management LLC's alleged liability and are subject to indemnification from LTL. For that reason, LTL does not believe those parties have a financial interest in the outcome of the proceeding.

3. Kristie Doyle
c/o Kazan, McClain, Satterley & Greenwood PLC
Attn: Steven Kazan, Esq.
55 Harrison St., Ste. 400
Oakland, CA 94607

4. April Fair
c/o Robinson Calcagnie, Inc.
Attn: Mark Robinson, Jr., Esq.
19 Corporate Plaza Drive
Newport Beach, CA 92660

5. William Henry
c/o Levin Papantonio Rafferty
Attn: Christopher Tisi, Esq.
316 S Baylen Street, Suite 600
Pensacola, FL 32502

6. Alishia Landrum
c/o Beasley Allen Law Firm
Attn: Leigh O'Dell, Esq.
PO Box 4160
Montgomery, AL 36103

7. Rebecca Love
c/o Ashcraft & Gerel, LLP
Attn: Michelle Parfitt, Esq.
1825 K Street, NW, Suite 700
Washington, DC 20006

8. Patricia Cook
c/o Weitz & Luxenberg, P.C.
Attn: Perry Weitz, Esq.
700 Broadway
New York, NY 10083

9. Randy Derouen
c/o Levy Konigsberg LLP
Attn: Moshe Maimon, Esq.
605 Third Avenue, 33rd Fl.
New York, NY 10158

10. Brandi Carl
c/o Golomb Spirt Grunfeld
Attn: Richard Golomb, Esq.
1835 Market Street, Suite 2900
Philadelphia, PA 19103

11. Sue Sommer-Kresse
c/o Motley Rice, LLC
Attn: Daniel Lapinski, Esq.
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...............................................................................v

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................5

    A.    LTL's 2021 Chapter 11 case .................................................................5

    B.    This Court's opinion in LTL's 2021 Chapter 11 case.............................8

    C.    LTL's new Chapter 11 case....................................................................9

    D.    Proceedings below...............................................................................12

ARGUMENT ....................................................................................................15

I.    Mandamus is inappropriate to challenge the Preliminary
Injunction Order ..........................................................................................16

    A.    The Committee does not dispute that it has an adequate
alternative route to relief via immediate appeal ......................................16

    B.    The Committee fails to show that the Bankruptcy Court's
limited injunction was an abuse of discretion, much less a
clear abuse constituting an unauthorized exercise of power...................18

        1.    The Bankruptcy Court's modest decision, which did not
harm claimants, is an inappropriate subject for mandamus ............19

        2.    The Bankruptcy Court did not apply the wrong standard
under § 105(a), much less commit error amounting to a
usurpation of power ........................................................................20

        3.    The Committee's arguments on bad faith and financial
distress similarly reveal no abuse of discretion, much less
clear abuse......................................................................................22

II.    Mandamus is inappropriate to challenge the Bankruptcy Court's
preliminary decision not to *sua sponte* dismiss the case...................................29

    A.    The Committee does not dispute that it has an adequate
alternative route to relief via a proper motion to dismiss........................29

    B.    The Committee cannot show a clear and indisputable right
to relief, especially because its requested relief violates the
debtor's due process rights .....................................................................31

CONCLUSION .................................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ...................................................................28

*ADP, Inc. v. Levin*,
  2022 WL 1184202 (3d Cir. Apr. 21, 2022) .......................................21

*Bullard v. Blue Hills Bank*,
  575 U.S. 496 (2015) ..............................................................................30

*Cheney v. U.S. Dist. Ct. for Dist. of Columbia*,
  542 U.S. 367 (2004)......................................................15, 19, 20, 27

*Citibank, N.A. v. Fullam*,
  580 F.2d 82 (3d Cir. 1978) .................................................................18

*Conestoga Wood Specialties Corp. v. DHHS*,
  724 F.3d 377 (3d Cir. 2013) ..............................................................21

*Fairfield Harbour Prop. Owners Ass'n v. Midsouth Golf, LLC*,
  215 N.C. App. 66 (2011) ....................................................................24

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
  276 F.3d 160 (3d Cir. 2001) ..............................................................21

*In re Barlow*,
  516 F. App'x 99 (3d Cir. 2013) .........................................................17

*In re Bestwall LLC*,
  605 B.R. 43 (Bankr. W.D.N.C. 2019) ..............................................7

*In re Bestwall LLC*,
  606 B.R. 243 (Bankr. W.D.N.C. 2019) ...........................................8

*In re Briscoe*,
  448 F.3d 201 (3d Cir. 2006) ..............................................................15

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004) ..............................................................28

*In re Comm. of Asbestos-Related Litigants*,
  749 F.2d 3 (2d Cir. 1984) ..................................................................31

*In re Congoleum Corp.*,
  414 B.R. 44 (D.N.J. 2009) .................................................................32

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re Diet Drugs Prods. Liab. Litig.*,
  418 F.3d 372 (3d Cir. 2005) .......................................................*passim*

*In re Emerson Radio Corp.*,
  52 F.3d 50 (3d Cir. 1995) ...................................................................17

*In re Fed.-Mogul Glob., Inc.*,
  300 F.3d 368 (3d Cir. 2002) ..............................................................28

*In re LTL Mgmt., LLC*,
  64 F.4th 84 (3d Cir. 2023) ...........................................................*passim*

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018) ..................................................15, 19, 20

*In re Pasquariello*,
  16 F.3d 525 (3d Cir. 1994) ................................................................18

*In re Phoenix Piccadilly, Ltd.*,
  849 F.2d 1393 (11th Cir. 1988) ........................................................31

*In re Union Tr. Philadelphia, LLC*,
  460 B.R. 644 (E.D. Pa. 2011) ...........................................................18

*In re W.R. Grace & Co.*,
  412 B.R. 657 (D. Del. 2009) ..............................................................17

*In re Wilson*,
  830 F. App'x 392 (3d Cir. 2020) .......................................................17

*Mar. Elec. Co. v. United Jersey Bank*,
  959 F.2d 1194 (3d Cir. 1991) ............................................................28

*McCartney v. Integra Nat'l Bank N.*,
  106 F.3d 506 (3d Cir. 1997) ..............................................................28

*McTernan v. City of York*,
  577 F.3d 521 (3d Cir. 2009) ..............................................................21

*Nken v. Holder*,
  556 U.S. 418 (2009)...........................................................................21

*Osorio-Martinez v. Att'y Gen.*,
  893 F.3d 153 (3d Cir. 2018) ..............................................................18

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
  140 S. Ct. 582 (2020) ............................................................................17

*Schlagenhauf v. Holder*,
  379 U.S. 104 (1964) ..............................................................................20

*Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*,
  335 F.3d 235 (3d Cir. 2003) ..................................................................19

*Travellers Int'l AG v. Robinson*,
  982 F.2d 96 (3d Cir. 1992) ....................................................................17

## STATUTES

11 U.S.C. § 105 ...................................................................................*passim*

11 U.S.C. § 362 ...................................................................................*passim*

11 U.S.C. § 524 ...............................................................................6, 30

11 U.S.C. § 548 ...................................................................................26

11 U.S.C. § 1102 .................................................................................12

11 U.S.C. § 1112 .................................................................................29

11 U.S.C. § 1129 .................................................................................31

28 U.S.C. § 158 ...................................................................................17

## OTHER AUTHORITIES

Fed. R. Bankr. P. 2002 ........................................................................32

Fed. R. Bankr. P. 8006 ........................................................................13

## INTRODUCTION

A writ of mandamus is an extraordinary remedy reserved for cases in which the lower court's action amounts to a judicial usurpation of power. The Bankruptcy Court's modest decision here—to grant, on a preliminary record, an injunction lasting only 60 days and barring only trials, and to decline to *sua sponte* dismiss the case—is a far cry from judicial usurpation.

Strict requirements ensure that mandamus remains extraordinary. First, a petitioner must not have any adequate alternative to pursue the desired relief, so mandamus is not a substitute for appeal. Second, the petitioner must establish a "clear and indisputable" right to mandamus relief—not just error, but error amounting to unauthorized exercise of judicial power.

In its Petition, the Official Committee of Talc Claimants (the "Committee") neither acknowledges these standards nor attempts to meet them. The Committee has multiple avenues to appeal the injunction and is *already pursuing them*. The Committee can also pursue dismissal for lack of good faith by filing an actual motion to dismiss, which it has *already done*. Fundamentally, the Petition seeks to appeal a decision on that motion, before a hearing is held and a decision made.

Nor does the Petition show any clear and indisputable right to relief. Claimants are not harmed by the very limited injunction, which allows all litigation short of trial, and indeed, the court allowed the only claimant that moved for a trial

to proceed. And the issues of good faith, financial distress, and fraudulent conveyance that the Committee raises cannot be finally determined on the limited record so far, as the Bankruptcy Court held. Meanwhile, proceedings on the Committee's motion to dismiss (and the six others) are moving quickly.

More broadly, the Petition paints a grossly misleading picture of the case. **First**, the Committee does not speak for the majority of the claimants. It comprises plaintiff firms representing a minority of claimants, who took the position in the first case that they would never agree to any resolution in bankruptcy. Now that the Debtor has reached agreement on the terms of a plan with other firms, representing the substantial majority of claimants, the Committee, in apparent coordination with the U.S. trustee,[2] has commenced a fusillade of litigation to prevent claimants from deciding for themselves whether to accept the terms.

**Second**, the terms of the proposed plan are extraordinary. The Debtor and its ultimate parent Johnson & Johnson ("J&J") have agreed to pay up to $8.9 billion to resolve all current and future claims, which would be the largest resolution of any asbestos or mass tort bankruptcy case. This is a more than four-fold increase over the previous commitment, $2 billion. Because the claims against LTL overlap with

---

[2] The Committee's counsel refused to answer questions at a deposition on the basis that the Committee and the U.S. trustee shared a common interest. SA25-39.

claims against two other Chapter 11 debtors—Imerys and Cyprus—the plan also provides a prime opportunity to resolve those cases.

***Third***, the Debtor did not secretly scheme to refile for bankruptcy to harm claimants. The Debtor, the Committee, and others continued in mediation and settlement negotiations after this Court's decision on January 30, 2023, yielding the agreement on the financial terms of a plan of reorganization. Indeed, the committee in the first bankruptcy case acknowledged in a filing (Dkt. 3934, ¶ 3 (Apr. 4, 2023)) that the Debtor had made it aware that it might file a second Chapter 11 petition.

***Fourth***, the Debtor has not defied this Court. This Court found that the Debtor was not in financial distress primarily because of its ability to seek funding from J&J. As explained below, the Debtor and its affiliates entered into new financing arrangements that effectuate the purpose of the original arrangements, are enforceable, and ensure the Debtor has sufficient funds to implement the proposed plan. This Court did not "warn" the Debtor not to change its financing arrangements; it simply pointed out that, if it did, the changes would be subject to challenge as a fraudulent transfer.

***Fifth***, the Debtor did not "give up" a $61 billion asset. The prior funding agreement contained commitments by the Debtor's affiliate, "New Consumer," and J&J to backstop the Debtor's *talc liability*. The current funding agreements do the

same. The value of the prior funding agreement was the *amount of the liability* (minus the value of the Debtor), not $61 billion, and that has not changed.

**Sixth**, the Committee's positions on financial distress (allegedly absent) and fraudulent transfer (allegedly present) are utterly contradictory. If the new financing arrangements produced insolvency, the Debtor must be in financial distress. If instead the Debtor is not in financial distress, there can be no fraudulent transfer. In fact, the Debtor is in financial distress but, because it is both balance-sheet and equitably solvent (that is, able to pay its debts as they come due)—which the Committee ignores yet this Court acknowledged are conditions different from financial distress—no fraudulent transfer occurred.

**Seventh**, support for the plan of reorganization is real and growing. More than 20 plaintiff firms representing over 60,000 claimants have signed plan support agreements, including two firms on the original talc claimants' committee. The agreements contain lists of the claimants represented by each firm. Although the Committee disparages that support, no member has submitted any evidence regarding the number or identity of claimants *it* represents or *its* claimants' views on the proposed plan.

The Court should not grant the Committee the extraordinary remedy of mandamus to continue its quest to block the Debtor and the majority of claimants from putting their agreed plan to a vote.

# BACKGROUND

## A.    LTL's 2021 Chapter 11 case

As this Court recounted in *In re LTL Management, LLC*, 64 F.4th 84 (3d Cir. 2023) ("*LTL*"), the former Johnson & Johnson Consumer Inc. ("Old Consumer"), a subsidiary of J&J, found itself by the mid-2010s engulfed by "a wave of lawsuits" spurred by attorney advertising alleging that the century-old Johnson's Baby Powder, a talc product, caused ovarian cancer and mesothelioma. *Id.* at 93-94. Although Old Consumer and J&J have denied that Baby Powder caused cancer, and usually prevailed at trial, by 2021 claims had surged to "over 38,000 ovarian cancer actions … and over 400 mesothelioma actions," with "thousands more" expected "in decades to come." *Id.* at 94, 108.

The talc litigation "[u]ndoubtedly … put financial pressure on Old Consumer." *Id.* at 94. It caused the pre-tax income of "J&J's Consumer Health business segment (for which Old Consumer was the primary operating company in the U.S.) to drop from a $2.1 billion profit in 2019 to a $1.1 billion loss in 2020." *Id.* The total talc-related liabilities "threatened Old Consumer's ability to make substantial talc-related payments from working capital or other readily marketable assets while funding its costs of operations." *Id.* at 95.

Seeking to "globally resolve talc-related claims through a chapter 11 reorganization without subjecting the entire Old [Consumer] enterprise to a

bankruptcy proceeding," Old Consumer carried out a corporate restructuring, resulting in the creation of LTL and "New Consumer." *Id.* at 97; A4 (PI Op.). LTL received "Old Consumer's talc liability," and its "reason for being" was to pursue "a bankruptcy filing" to resolve that liability. 64 F.4th at 97. LTL particularly sought to do so via 11 U.S.C. § 524(g), a provision specially tailored to resolving asbestos liability—both current and future claims—by creating a trust for the benefit of claimants, as Baby Powder had been alleged to contain trace amounts of asbestos. *Id.* at 94, 98. LTL also received certain assets, particularly rights under a 2021 Funding Agreement, while New Consumer received the remaining Old Consumer assets. *Id.* at 97; *see* A4.

This 2021 Funding Agreement had two payors. *First*, to avoid any ground for claiming a fraudulent transfer due to the corporate restructuring, New Consumer was obligated to pay (as needed, under certain conditions) LTL's "Talc-Related Liabilities," normal-course expenses, and bankruptcy expenses, including funding a trust. A4; 64 F.4th at 96. The objective was to "make certain" the Debtor had "the same, if not greater, ability to fund" the restructuring as Old Consumer would have. *First Day Decl.* ¶ 21, No. 21-30589 (Bankr. D.N.J. Oct. 14, 2021); *Brief for Debtor-Appellee* 21, *LTL*, 64 F.4th 84.

*Second*, in earlier asbestos bankruptcies following a similar restructuring, claimants' counsel had complained that such funding agreements were "illusory and

insufficient," because an obligor like New Consumer might give up value (such as via dividends and asset transfers) to subvert the payment right. *See, e.g., In re Bestwall LLC*, 605 B.R. 43, 49-50 (Bankr. W.D.N.C. 2019). To avoid that challenge, the 2021 Funding Agreement also included J&J—as "a funding backstop," jointly and severally liable with New Consumer. *See* 64 F.4th at 109; A4. Notwithstanding the inclusion of J&J, the prior committee *did argue* in LTL's 2021 bankruptcy case that the funding agreement was "an illusory contract right" meant to "deprive" talc claimants of the "assets backing their claims." *Mot. of Comm. of Talc Claimants to Dismiss* ¶¶ 6-7, No. 21-30589 (Bankr. D.N.J. Dec. 1, 2021). Simultaneously, it also argued that the backstop afforded by the funding agreement meant LTL was not in imminent financial distress, and that argument ultimately prevailed.

Old Consumer envisioned the restructuring and LTL's bankruptcy as—and the Bankruptcy Court found it was—part of "a single integrated transaction" aimed at pursuing a resolution in bankruptcy. 64 F.4th at 99, 105. LTL therefore filed its petition for Chapter 11 relief promptly after the restructuring, in October 2021. *Id.* at 97.

After a five-day trial, the Bankruptcy Court "in two thorough opinions, denied" "mo[tions] to dismiss LTL's bankruptcy case as not filed in good faith" and extended the automatic stay of actions against LTL to various nondebtors, including J&J and New Consumer. *Id.* at 93, 97-98. The stay extension, under the authority of 11 U.S.C.

§§ 105(a) and 362, enjoined all litigation against those nondebtors of "the same talc claims that exist against the Debtor." A5. Such injunctions are typical in mass-tort Chapter 11 proceedings. *See In re Bestwall LLC*, 606 B.R. 243, 254 & n.12 (Bankr. W.D.N.C. 2019) (collecting cases).

### B.    This Court's opinion in LTL's 2021 Chapter 11 case

Accepting a certified direct appeal, this Court reversed the Bankruptcy Court's denial of the motions to dismiss. 64 F.4th at 111. This Court did not question that LTL commenced its case with the "good intentions" to obtain an equitable and efficient resolution for all claimants. *Id.* at 93. But while this Court recognized that the Debtor "inherited massive liabilities" and faced "thousands" of future claims, it concluded that the Debtor was able to "call on assets to fund them." *Id.* at 109. The Court found the Debtor held "reliable" funding rights from New Consumer and its "cash-flowing brands" and, "most important[ly]," from "LTL's direct access to J&J's exceptionally strong balance sheet" via the 2021 Funding Agreement, which the Court likened to an "ATM" backed by J&J as the "ultimate safeguard." *Id.* at 106, 109. Given those rights, the Court found LTL "highly solvent," with "access to cash to meet comfortably its liabilities as they came due for the foreseeable future." *Id.* at 108. Based on its finding that the Debtor was not in financial distress just before it filed, the Court determined that the filing was not made in good faith and directed the Bankruptcy Court to dismiss. *Id.* at 110-11.

The panel acknowledged the "apparent irony" that, by providing the funding backstop to place beyond dispute LTL's *ability to fund* a Chapter 11 plan, J&J had made LTL *too financially able* for Chapter 11. *Id.* at 110; *see id.* at 111 ("Put another way, the bigger a backstop a parent company provides a subsidiary, the less fit that subsidiary is to file.").

### C. LTL's new Chapter 11 case

During the appeal, the parties remained under the direction of the Bankruptcy Court to continue to pursue a settlement. After this Court issued its opinion on January 30, 2023, and while LTL sought rehearing *en banc* and then a stay of the mandate, these efforts began to bear fruit, because the parties recognized bankruptcy was the only forum in which resolution of all claims, both current and future, was possible. Significant support arose for the material terms of a plan of reorganization, in which the Debtor and J&J committed to pay up to $8.9 billion in net present value, which led to the signing of plan-support agreements by attorneys for tens of thousands of talc claimants. *See Debtor's Statement Regarding Refiling* 2, No. 23-12825 (Bankr. D.N.J. Apr. 4, 2023); *Initial Statement of Ad Hoc Comm. of Supporting Talc Claimants*, No. 23-12825 (Bankr. D.N.J. Apr. 20, 2023); *see also* A1299-1330 (related proposed agreements).

Given the Court's ruling in *LTL*, however, the 2021 Funding Agreement no longer served its intended purpose: to facilitate resolution of all current and future

talc claims in bankruptcy. From J&J's perspective the agreement therefore was void or voidable, and unenforceable. J&J's head of litigation testified that conversations regarding how the decision affected the agreement began "the day of the Third Circuit's decision." A1106-07.[3] LTL's Chief Legal Officer, John Kim, likewise testified that "one of the ramifications of the decision was that it frustrated the purpose of the first funding agreement."[4] Mr. Kim testified that he had "numerous conversations" with J&J attorneys on the topic, resulting in a "consensus" that there was a material risk that the 2021 Funding Agreement was unenforceable, "particularly the J&J guarantee." A131, 134, 141; A767-68, 774-75, 880-81, 900.[5]

Without the support of J&J's funding backstop, LTL faced the imminent financial distress that, under this Court's ruling, the backstop had obviated. A652. Indeed, the same talc liability that existed when LTL filed its first Chapter 11 petition

---

[3] The Committee's contention that Mr. Haas "did 'not recall having conversations about the agreement being void or voidable'" is inaccurate. Pet.10-11. The testimony the Committee quotes was answering whether there were such discussions "*before* the Third Circuit's decision." A1106-08 (emphasis added).

[4] The Committee's contention that he "admit[ted]" that the replacement of the 2021 Funding Agreement was "designed so that" LTL would be distressed is inaccurate. Pet.1-2; *see id.* at 18-19, 23. The Petition cites only his First Day Declaration, but that says nothing about such a "design." And at the hearing, he testified that "we did not give up funding agreement one" but rather responded to the effect of this Court's decision. A131. He further explained: "I don't blame the Third Circuit" but do recognize "the ramifications of the decision." A130; *contra* Pet.20.

[5] The Committee's contention that Mr. Kim "conceived the idea" of possible unenforceability is inaccurate. Pet.10. Indeed, he testified to the contrary. A138-39.

remained and had been compounded by the skyrocketing (perhaps *doubling*) of talc claims thereafter. A246, 248; *see* A898.

To address that financial distress and effectuate the intent of the original funding agreement for the benefit of LTL's creditors, the Debtor, J&J, and New Consumer (n/k/a Holdco) developed new financing arrangements. As to Holdco, the 2023 Funding Agreement is "similar in many respects to the [2021] funding agreement," focused on funding the Debtor's talc-related liabilities in or out of bankruptcy. *Debtor's Statement* 6-7. J&J is not party to it but rather is party to a separate "J&J Support Agreement." That is subject to the Bankruptcy Court's approval, operates only in the Chapter 11 case, and "obligates J&J to provide the trust funding Holdco is required to provide under the 2023 Funding Agreement but only if Holdco fails to provide the funding," with Holdco obligated to reimburse J&J. *Id.* These new agreements (a) restored the purpose and enforceability of the 2021 Funding Agreement, (b) facilitated confirmation of a plan containing the terms supported by tens of thousands of claimants, and (c) benefitted claimants' interests. *Id.* at 6.

With the new funding agreements in place, LTL finalized the proposed reorganization plan with counsel representing over 60,000 claimants. *Cf.* A2826-37. On April 4, after this Court declined to stay its mandate and the Bankruptcy Court carried out that mandate, LTL filed for bankruptcy a second time to implement the

plan it had been successfully negotiating. A6. As the Bankruptcy Court recognized: "In conjunction with the Petition, Debtor filed" Plan Support Agreements that had "'been executed and delivered by counsel on behalf of over 60,000 claimants and signed by the Debtor, Holdco and J&J ….'" A6.

An Ad Hoc Committee of Supporting Talc Claimants formed, "to advance the common interests of the law firms that have entered into a plan support agreement." *Initial Statement* ¶ 1. It submitted an initial statement providing corroborating and clarifying details, including that it consisted of 14 law firms—"preeminent members of the mass tort plaintiffs' bar who have led the talc litigation for over a decade"— that "collectively represent more than 55,000 talc claimants." *Id.* ¶¶ 1-2. Two of the firms represented members of the prior official Committee. *Id.* ¶ 1. The Ad Hoc Committee has now grown to 20 firms representing 60,000 claimants.

### D.    Proceedings below

The Debtor commenced an adversary proceeding within the bankruptcy case to obtain another extension of the automatic stay or temporary injunction. A7. At "the parties' request," the Bankruptcy Court kept it "on a tight timeframe," with an evidentiary hearing and argument on April 18, immediately after expedited fact-witness depositions.[6] *Id.*

---

[6] The primary opposing party is the Committee, appointed by the U.S. trustee (11 U.S.C. § 1102(a)(1)). The Committee comprises law firms that oppose LTL's

"To accommodate the parties' request" that it rule "as soon as possible," the court ruled orally two days later. A8. The next day, the Committee (among others) filed a notice of appeal to the District Court and requested to certify that ruling for direct appeal to this Court. Adv. Dkt. 83 & 84. And the day after that, on a Saturday morning, the Committee moved to shorten the notice period for its certification request (Adv. Dkt. 85), so that the Bankruptcy Court would hear the matter four business days later, on April 27, rather than allowing the typical fourteen days to respond, Fed. R. Bankr. P. 8006(f)(3). The Committee threatened that, if the Bankruptcy Court did not yield to this demand, it would pursue unspecified emergency relief from this Court. The Bankruptcy Court scheduled the hearing for May 9, just enough time for the Debtor to have the standard period to respond. The court also issued a 31-page opinion elaborating on its oral ruling. A1.

Unlike in LTL's first bankruptcy case (and other asbestos bankruptcies), the Bankruptcy Court issued only an "extremely limited" stay-extension and injunction. A22. It stays only *trials* and only for *60 days*.[7] A2. Thus, the court found that "the Talc Claimants will not be harmed." A25. The Bankruptcy Court so ruled only after

---

Chapter 11 case and proposed plan. At least some have financial conflicts, standing to lose hundreds of millions of dollars from a common-benefit fund established in the MDL if their clients' claims are resolved in bankruptcy. SA08-21.

[7] Only one firm advised the court that it had a trial set during the 60-day period. The Petition highlights that claimant, Pet. 33, but the court has since allowed that trial to proceed. SA01-05.

working through this Court's decision in *LTL*—recognizing that, on the one hand, it was "constrained" by that precedent on questions of good faith and financial distress and that, on the other hand, this Court changed nothing on issues specific to issuing such a temporary injunction. *See* A6, 12, 13, 15 n.8, 17-23, 24-25, 27.

The court held that the automatic stay should, under § 362(a), extend to the specified affiliates and third parties. A12-15. With respect to § 105(a), however, the Committee had made the question of good faith, including financial distress, the focus via the first injunction factor as adapted for bankruptcy—whether the Debtor had a reasonable likelihood of reorganizing. A16. The court concluded, on the one hand, that, "At this juncture, Debtor has met its burden. Indeed, Debtor has outlined its reorganizational strategy." *Id.* On the other hand, there was a real question whether, as claimed, "the bankruptcy was not filed in good faith." A17. After a seven-page analysis of how "to apply the Third Circuit's ruling to the facts of the present case," and recognizing the "extremely truncated timetable" and resulting "uncertain and undeveloped" record, the Bankruptcy Court was unwilling to hold that "the bad faith objections" obviated Debtor's prospects. *See* A17-23, 28. The court also recognized that a motion to dismiss, which the Committee had by then filed, would be "the more appropriate vehicle to directly address this issue and develop the necessary factual record." A22 n.11. It also would appropriately afford Debtor an "adequate opportunity" to respond. A21. Several other parties have filed

motions to dismiss, and the Bankruptcy Court has set aside June 12 to 16, 2023, for a hearing.

On May 1, the Committee petitioned this Court for a writ of mandamus. On Wednesday, May 3, this Court ordered respondents to answer no later than 4:00 p.m. on May 8, 2023.

## ARGUMENT

Mandamus provides a "drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to a judicial usurpation of power." *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005) (citation omitted). It is not a means to correct "all potentially erroneous orders." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018) (citation omitted). Rather, it is appropriate only when the petitioner establishes there is "(1) 'no other adequate means' to attain the relief sought, and (2) a right to the writ that is 'clear and indisputable.'" *In re Briscoe*, 448 F.3d 201, 212 (3d Cir. 2006) (quoting *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380-81 (2004)). "[E]ven if these first two conditions are met, the reviewing court in its discretion must conclude that the writ 'is appropriate under the circumstances.'" *Id.* (quoting *Cheney*, 542 U.S. at 381). Dozens of Third Circuit and Supreme Court cases reiterate these prerequisites, but the Committee avoids them all. Not once does it articulate the standard it must meet and this Court must apply.

Even cursory review of the Bankruptcy Court's opinion and conduct in this month-old case shows the Petition is wholly inappropriate. The opinion marches through LTL's arguments and various objections, repeatedly noting the preliminary posture and limited record. Far from ignoring *LTL*, the Bankruptcy Court acknowledged and applied it as precedent. The resulting injunctive relief is "extremely limited" in scope and duration, A22, contrary to the Committee's characterization of it as "[s]weeping," Pet.13, and does not harm claimants. Thus, there has been no "judicial usurpation of power," or anything remotely resembling one. Nor does the Committee otherwise carry its burden under the mandamus prerequisites it ignores: It has obvious alternative means of relief, which it is already pursuing. And it fails to show that the Bankruptcy Court's limited, temporary injunction was an abuse of discretion—much less a clear and indisputable one. The Committee's further plea that the Bankruptcy Court should have *sua sponte* dismissed the whole case at the outset is even more attenuated from any error, much less one that would warrant extraordinary relief.

I.    **Mandamus is inappropriate to challenge the Preliminary Injunction Order.**

    A.    **The Committee does not dispute that it has an adequate alternative route to relief via immediate appeal.**

This Court and the Supreme Court have repeatedly held that mandamus may not issue where a petitioner has an adequate alternative means to pursue relief,

including—most commonly—the availability of appeal. In short, "mandamus must not be used as a mere substitute for appeal." *Diet Drugs*, 418 F.3d at 379 (citation omitted). Adequate review includes "both immediate appeals … and appeals following final judgment." *Id.* Indeed, the Court "will ordinarily deny" mandamus when "interlocutory appeal seems a practical but untried avenue." *Travellers Int'l AG v. Robinson*, 982 F.2d 96, 98 (3d Cir. 1992) (citation omitted).

The rule applies in bankruptcy cases. *E.g.*, *In re Emerson Radio Corp.*, 52 F.3d 50, 56 (3d Cir. 1995) (denying petition because appeal available). For example, this Court denied mandamus where the petitioner sought relief from the automatic stay, because the denial of such relief was "appealable." *In re Wilson*, 830 F. App'x 392, 393 (3d Cir. 2020). Similarly, this Court denied mandamus where a petitioner's case was already "on appeal to the District Court." *In re Barlow*, 516 F. App'x 99, 100 (3d Cir. 2013).

Here, the Committee may, under 28 U.S.C. § 158(a), appeal to the district court the Bankruptcy Court's order extending the automatic stay and granting temporary injunctive relief. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 592 (2020); *In re W.R. Grace & Co.*, 412 B.R. 657, 660 (D. Del. 2009). And it may under § 158(d)(2) seek certification of a direct appeal to this Court. Indeed, the Committee *already has done all that*—the day after the Bankruptcy Court's oral ruling. *Supra*, Bkgd. D. (The Bankruptcy Court will hear its certification motion

tomorrow.) Because this "first requirement for a writ of mandamus is not met," mandamus must be denied. *Diet Drugs*, 418 F.3d at 379.

The Committee's only response to this requirement—which it otherwise ignores—is to argue that "[m]andamus would be warranted even if the bankruptcy court's actions could be reviewed on appeal later." Pet.17. It cites *Citibank, N.A. v. Fullam*, 580 F.2d 82 (3d Cir. 1978), without explanation. But *Citibank* held that the petitioner could *not* have immediately appealed—the opposite of the Committee's situation. *Id.* at 88. And this Court has since rejected the idea that "carefully crafted rules of limited interlocutory review [c]ould be circumvented through the vehicle of mandamus." *In re Pasquariello*, 16 F.3d 525, 528 (3d Cir. 1994).

## B. The Committee fails to show that the Bankruptcy Court's limited injunction was an abuse of discretion, much less a clear abuse constituting an unauthorized exercise of power.

The decision to extend preliminary injunctive relief under 11 U.S.C. §§ 362(a) and 105(a) is committed to the bankruptcy court's discretion. *In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 658 (E.D. Pa. 2011); *see also Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 161 (3d Cir. 2018) ("reviewed for abuse of discretion" (citation omitted)). That deferential standard "reflects the need for flexibility by the trial court in making determinations 'almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final

hearing with the consequences of immediate irreparable injury.'" *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 241 (3d Cir. 2003).

Mandamus raises the bar even higher, because it is "reserved for really extraordinary causes." *Cheney*, 542 U.S. at 380 (citation omitted). "[O]nly exceptional circumstances amounting to a judicial 'usurpation of power' or a *clear* abuse of discretion, will justify the invocation of this extraordinary remedy." *Id.* (cleaned up) (emphasis added). "[E]rrors of law must at least approach the magnitude of an unauthorized exercise of judicial power." *McGraw-Hill*, 909 F.3d at 57 (cleaned up). In short, a petitioner must show that its "right to issuance of the writ is 'clear and indisputable.'" *Cheney*, 542 U.S. at 380 (citation omitted). The Committee does not come close to clearing that bar.

### 1.    *The Bankruptcy Court's modest decision, which did not harm claimants, is an inappropriate subject for mandamus.*

The Committee does not describe the Bankruptcy Court's decision as "a judicial usurpation of power," nor could it. *See Diet Drugs*, 418 F.3d at 378. The court acknowledged that it made its decision on a "tight timeframe"—"at the parties' request"—and a "limited record," and the result is an "extremely limited" injunction. A7, 19, 22. The opinion repeatedly distinguishes issues this Court decided from issues it left alone. *E.g.*, A17-19. And the court disclaimed any intent to prejudge the now-filed motions to dismiss. A23. This is no rogue court.

Furthermore, as the Bankruptcy Court found, claimants "will not be harmed" by the preliminary injunction, given its "very limited nature." A25. In contrast to preliminary injunctions in other asbestos mass-tort bankruptcies (including LTL's prior case), which stay all litigation throughout the bankruptcy, *supra*, Bkgd.A, the injunction here lasts only 60 days and restrains only trials (A25), which the court found would particularly harm the Debtor's reorganization process (A11, 24). It does not restrain "the filing of new complaints, … discovery, or other pretrial matters." A29. And when one firm advised that it had a trial scheduled to begin in the 60-day period, the court allowed it to proceed. *Supra* n.7. In general, mandamus will not lie "even though hardship may result from delay." *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964). Here, there is no hardship, and the Committee cannot possibly justify a "drastic and extraordinary" remedy. *Cheney*, 542 U.S. at 380 (citation omitted).

### 2. *The Bankruptcy Court did not apply the wrong standard under § 105(a), much less commit error amounting to a usurpation of power.*

The Committee makes much of the Bankruptcy Court's use of the word "possibility" instead of "probability" to describe the showing of a likelihood of success in bankruptcy required for preliminary injunctive relief. There is no legal error here, much less error amounting to an "unauthorized exercise of judicial power." *McGraw-Hill*, 909 F.3d at 57.

*First*, the court repeatedly quoted the correct standard, which is a "reasonable likelihood" of a successful reorganization. A16. The Bankruptcy Court also stated, correctly, that the movant must show a "reasonable probability of success," drawing on opinions from this Court. A15 (quoting *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009), and citing *ADP, Inc. v. Levin*, 2022 WL 1184202, at *1 (3d Cir. Apr. 21, 2022); *Conestoga Wood Specialties Corp. v. DHHS*, 724 F.3d 377, 397 (3d Cir. 2013) (Jordan, J., dissenting)). The Bankruptcy Court also noted, again correctly, that the movant need not forecast bankruptcy success "with certainty." A16; *see Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 173 (3d Cir. 2001) ("the plaintiff need only prove a prima facie case, not a certainty"). Finally, the court used the term "prospect" of success, which comes from the dictionary definition of "likelihood." A16; *see Conestoga Wood*, 724 F.3d at 397-98 (Jordan, J., dissenting) (a "prospect" means "showing some promise").

The Bankruptcy Court's embrace of these correct standards—a "reasonable likelihood," a "'reasonable probability,'" but not a "certainty," A15-16—distinguishes its opinion from the "mere possibility" standard rejected in *Nken v. Holder*, a non-bankruptcy case in which the Supreme Court equated that phrase to just "better than negligible." 556 U.S. 418, 434 (2009) (citation omitted). The Bankruptcy Court's application of this standard proves the point. The court held that LTL "met its burden" based on real evidence of LTL's "reorganizational strategy,"

founded on broad claimant support. A16. The court was not using the term "possible" in the sense of *theoretically* or *technically* possible but in the sense of LT'sL having a real *prospect* of reorganization, based on plausible legal arguments and creditor support—a "reasonable likelihood."

*Second*, even if the court's use of "possibility" alongside "probability" were legal error, it would not amount to a judicial usurpation. Nor did the Bankruptcy Court "effectively concede[]" that the LTL would be unable to succeed under a "probability" standard. Pet.30. The Bankruptcy Court quoted that "'probability'" standard and cited a half-dozen cases embracing it, and it held LTL met its burden under their standard. A15-16.

*Third*, as explained below, any error under the § 105(a) standard is further unworthy of mandamus because the Bankruptcy Court independently grounded its limited injunction on § 362(a).

### 3.    *The Committee's arguments on bad faith and financial distress similarly reveal no abuse of discretion, much less clear abuse.*

The bulk of the Committee's petition reads like an appellate merits brief (appealing a hypothetical different order) and contends that LTL cannot show good faith because the change in its funding is invalid and LTL is therefore not in financial distress. Pet.18-28. While, as the Bankruptcy Court recognized, that argument relates more directly to the Committee's pursuit of dismissal, the Committee also contends that LTL's purported bad faith means it "cannot show the reasonable

likelihood of success needed to justify a preliminary injunction." Pet.28-29. As already explained, the Bankruptcy Court's thorough analysis and limited injunction are a far cry from judicial usurpation, and that is enough to require denying the Petition. But the Committee's arguments are wrong even on the straight-up merits.

As an overarching matter, the Committee fails to acknowledge the limited nature of the record, due to the accelerated resolution that *the parties requested*. The Bankruptcy Court emphasized this and recognized questions ripe for further development. *E.g.*, A17-19. But even if reviewed in disregard of that invited procedural posture, the Committee's specific arguments still fail.

***First***, before the parties have tried or even briefed the issue below, the Committee proclaims that J&J's participation in the 2021 Funding Agreement could not be not void or voidable. But that ignores its purpose; the "apparent irony" that this Court declined to "duck," 64 F.4th at 110; and the record below.

In *LTL*, the panel rejected LTL's bankruptcy not because it *prejudiced* claimants but because J&J's support, which "it was never required to provide," made LTL in its brief pre-bankruptcy existence financially *stronger* than Old Consumer. *Id.* at 111. The "irony" that the purpose of J&J's support had the opposite effect is the heart of the frustration of the original funding agreement. J&J provided its support to cement LTL's *good faith* toward claimants. But under *LTL*, its backstop amounted to *bad faith*. This unforeseeable reversal of the purpose of J&J's

participation potentially yielded "a failure of consideration or the expected value of the performance." *Fairfield Harbour Prop. Owners Ass'n v. Midsouth Golf, LLC*, 215 N.C. App. 66, 79 (2011).

The Committee makes much of the fact that J&J's original funding obligation applied outside as well as inside bankruptcy. But it does not explain how that belies the fundamental purpose of J&J's backstop, which all parties and courts understood was to ensure LTL *could enter bankruptcy*, immune from claimants' inevitable attacks on its funding, and thereby have the opportunity to *pursue a successful reorganization*.

The Bankruptcy Court explicitly noted that the voidability of the original funding agreement is "unresolved." A23. The Committee may seek to resolve the issue in future, more appropriate proceedings. Indeed, it continues to press the issue in its since-filed motion to dismiss. *See Motion* 13, No. 23-12825 (Bankr. D.N.J. Apr. 24, 2023).

***Second***, the Committee's attacks on LTL's new funding arrangement as an actual or constructive fraudulent conveyance similarly fail to show any abuse of discretion on this record, much less a clear abuse. Pet.23-26.

As to actual fraud, there is no evidence that LTL's new funding arrangement is intended to defraud creditors. LTL had good reason to believe that J&J's prior participation was void or voidable, as explained above, and LTL has secured

replacement support from J&J and Holdco. Nor does the long-planned (for entirely independent reasons), long-announced, and long-known spinoff of Holdco's consumer business show intent to harm creditors.[8] There is *zero evidence* that the *purpose* or *intent* of the spinoff was to create financial distress. Mr. Kim's observation that the spinoff affects Holdco's cashflow, which bears on financial distress, is nothing of the sort. Thus, the Bankruptcy Court's conclusion that "this record" does not support a finding of subjective intent is no abuse of discretion. A19-20.

Furthermore, LTL continues to believe that it will be able to successfully fund a reorganization plan supported by a substantial majority. The Committee cannot point to *any evidence* that either the new support agreements or the spinoff will affect LTL's financial wherewithal to do so. Indeed, the Committee's arguments are at war with each other: On the one hand, it claims that LTL's new financing arrangement is evidence of bad faith because it "manufacture[s] financial distress." Pet.19. On the other, it points to statements from Mr. Kim that LTL continues to have sufficient funding to meet talc liabilities as evidence that LTL is *not* in financial distress. Pet.28 (citing A246). Such an evidence-heavy question should be based on a full record

---

[8]    https://www.jnj.com/johnson-johnson-announces-plans-to-accelerate-innovation-serve-patients-and-consumers-and-unlock-value-through-intent-to-separate-consumer-health-business; *see TCC Opening Br.* 33, No. 22-2003 (3d Cir. June 30, 2022) (noting plan and citing press release).

developed at a hearing on the motions to dismiss, and not on the Committee's speculation out of both sides of its mouth. A18.

Finally, the Committee's repeated claim that this Court "warned" LTL not to change its funding arrangement is incorrect. *E.g.* Pet.1, 6. In footnote 18, this Court simply anticipated that the Debtor might make changes but pointed out, if it did, they would be subject to challenge as a fraudulent transfer—a question the Court described as "premature." *LTL*, 64 F.4th at 109 n.18.

On constructive fraud, the Committee's arguments run into the same issue. This Court and the Bankruptcy Court both observed that constructive fraud requires insolvency. *See* 11 U.S.C. § 548(a); *LTL*, 64 F.4th at 109 n.18; A19. This depends on an estimate of LTL's liabilities and assets that, as this Court has instructed, must be better than a "back-of-the-envelope forecast" on a "limited record." A19. The Committee again attacks LTL's showing of financial distress, claiming that Mr. Kim's belief that LTL is not *equitably insolvent* (being unable to pay debts as they come due) is inconsistent with a finding of *financial distress*. But this Court just reiterated that neither balance-sheet nor equitable insolvency is required to file for Chapter 11 relief and that a firm may be financially distressed but not insolvent. *LTL*, 64 F.4th at 102.

***Third***, the Committee's attacks on LTL's showing that it has a reasonable likelihood of successfully reorganizing cannot support mandamus because the

Bankruptcy Court found independent grounds to extend the automatic stay under § 362(a). Thus, the injunction would survive even if the Bankruptcy Court abused its discretion under § 105(a). The Committee cannot justify mandamus—"one of 'the most potent weapons in the judicial arsenal'"—where it would not even provide "'the relief [the petitioner] desires.'" *Cheney*, 542 U.S. at 380-81 (citations omitted).

Section 362(a)(1) and (3) provide that the automatic stay applies to proceedings "against the debtor… or to recover a claim against the debtor" and to "any act to obtain possession of property of the estate." The Bankruptcy Court reasoned (drawing on decisions in LTL's first case) that these provisions provide a basis "independent" of § 105(a) to extend the stay to nondebtor third parties. A8. And the court held that extending the automatic stay was justified under § 362(a) for several reasons. Because LTL is responsible for all talc liabilities under a corporate agreement stretching back to 1979, the talc claims "are, fundamentally, an attempt to liquidate and recover claims against the debtor" under § 362(a)(1). A13. Furthermore, LTL shares insurance coverage with parties covered by the injunction, and those policies are "property of the estate" under § 362(a)(3). *Id.* Finally, under this Court's precedent (building on longstanding Fourth Circuit precedent), § 362(a) allows extending the automatic stay to nondebtor third parties in "'unusual circumstances,'" where "'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant'" or where

27

"stay protection is essential to the debtor's efforts of reorganization." *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997). The Bankruptcy Court found under *McCartney* that the corporate transactions, indemnification, and shared insurance mean LTL is the real party in interest in any talc trial and that talc trials would interfere with reorganization efforts by affecting "claims valuations, estimation, insurance, and mediation efforts inside this bankruptcy." A11, 14.

The Committee buries its response to these three findings in a footnote that grapples with neither the text of § 362(a) nor *McCartney*. Pet.32 n.4. The Committee fails to reconcile its citation of *Maritime* with this Court's more recent decision in *McCartney*. *See Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991). And the other cases it cites either support the applicability of § 362(a) here, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999-1001 (4th Cir. 1986) (favorably cited, *McCartney*, 106 F.3d at 510-11), or are off-point—not about § 362(a); and depending on different facts, such as the absence of corporate affiliation, of a single product, or of express indemnification agreements. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 227-33 (3d Cir. 2004); *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002). The Committee's two sentences hardly present an extraordinary error justifying mandamus.

**II.    Mandamus is inappropriate to challenge the Bankruptcy Court's preliminary decision not to *sua sponte* dismiss the case.**

The Committee also seemingly challenges the Bankruptcy Court's decision not to dismiss LTL's case out of the gate. This second challenge suffers from the same defects, plus another: When the Bankruptcy Court ruled, the Committee had not even *filed* a motion to dismiss. The Committee's suggestion that the court nevertheless should have plowed ahead disregards both LTL's due process right to respond to potential dismissal and the Bankruptcy Court's insistence on deliberation and a full record for any decision on dismissal. The Committee offers no case where mandamus was granted in response to a bankruptcy court's denial of a motion to dismiss, much less where the court refused to do so *sua sponte*.

**A.    The Committee does not dispute that it has an adequate alternative route to relief via a proper motion to dismiss.**

As explained above, mandamus can only issue when "the petitioner [has] no other adequate means to attain the relief sought"—usually, appeal. *Diet Drugs*, 418 F.3d at 379.

In this case, the Committee seeks dismissal of LTL's bankruptcy case under 11 U.S.C. § 1112(b), for lack of good faith. As the Committee admits, it "orally moved to dismiss," which the Bankruptcy Court reasonably took as a suggestion to use its *sua sponte* authority, which it declined to do. Pet.3 (citing A20). The adequate other means should go without saying: If the Committee thinks the case should be

dismissed, it should *file a motion to dismiss*. If mandamus will not lie when a party can appeal, then all the more will it not lie when a party has not even filed a motion, whose resolution it might appeal. And indeed, in the intervening time, the Committee has done just that. *Motion*, No. 23-12825 (Bankr. D.N.J. Apr. 4, 2023).

The Committee tries to contend that if the Court does not issue a writ on the issue of LTL's purported bad faith, LTL will "short-circuit the appellate process by filing a reorganization plan" soon. Pet.5. But merely *proposing* a plan will have no effect on the motion-to-dismiss litigation, nor could it otherwise harm anyone.

It is only plan *confirmation* that would resolve the bankruptcy case. So the Committee is either concerned that LTL's plan actually has enough support to clear § 524(g)'s threshold of 75% of claimants' votes—which should be a *good thing*— or that LTL will "stuff the ballot box," *id.*—which implicitly assumes that Judge Kaplan would allow a fraud on the court. By either route, an accelerated confirmation of a plan would be subject to immediate appellate review (*see Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015)), which would include the issue of good faith. [9] As the Second Circuit recognized in the foundational *Johns-Manville* bankruptcy (in *denying mandamus* to force review of a denial of dismissal): "The issue of bad faith… will be reflected, to some extent at least, in the plan of

---

[9] In any case, Judge Kaplan has indicated he does not "intend to engage in beat-the-clock on either side, on the dismissal motions or on the plan process." SA04.

reorganization [the debtor] submits to the bankruptcy court," because the Code requires that the plan be "proposed in good faith." *In re Comm. of Asbestos-Related Litigants*, 749 F.2d 3, 5 (2d Cir. 1984) (citing 11 U.S.C. § 1129(a)(3)); *see also In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988) ("a petition filed in bad faith… would fail to meet section 1129's good faith requirement" (citation omitted)). This also complements the usual "merger rule"—"that interlocutory orders merge into the final judgment and may be challenged on appeal from that judgment." *Diet Drugs*, 418 F.3d at 377.

### B. The Committee cannot show a clear and indisputable right to relief, especially because its requested relief violates the debtor's due process rights.

The Committee's arguments that the Bankruptcy Court erred with respect to issues of fraudulent conveyance, financial distress, and bad faith are misguided for all the reasons provided above in Argument I.B. Indeed, the necessarily limited record developed at the hearing on LTL's motion for preliminary injunctive relief is even more glaring with respect to dismissal. Before, the Bankruptcy Court held a five-day trial, and the results were still described as "back-of-the-envelope forecasts." *LTL*, 64 F.4th at 108. The Committee's contentions that the court should have dismissed the case on the limited record so far flies in the face of this Court's previous opinion, as the Bankruptcy Court recognized. A19 ("Given the limited record, this Court cannot make an informed determination, calculation, or

comparison of the assets and liabilities of *this* Debtor, which—the Third Circuit instructs—is the entity upon which the inquiry should be focused.").

In addition, the Committee pointedly declines to engage with the Bankruptcy Court's concern that *sua sponte* dismissal (or dismissal on an oral motion) would violate LTL's due-process rights, which require "notice of the issue and an opportunity to address it," not to mention "extensive fact-finding." A20-21. Bankruptcy Rule 2002(a)(4) requires that interested parties receive twenty-one days' notice of a hearing on dismissal, *sua sponte* or otherwise. *In re Congoleum Corp.*, 414 B.R. 44, 60-61 (D.N.J. 2009). The Bankruptcy Court reasonably found that LTL did not have an "adequate opportunity" to respond to various oral requests for dismissal, especially in light of this Court's focus on the inadequacies of the record in LTL's previous bankruptcy. A21; *see LTL*, 64 F.4th 106-08. Multiple motions to dismiss have now been filed comprising *145 pages* of briefing. *See*, *e.g.*, No. 23-12825 (Bankr. D.N.J. Apr. 24 & May 1, 2023) [Dkt. 286, 379, 384]. The continued suggestion that *sua sponte* dismissal could substitute for full briefing and future development of the record is absurd. This Court should leave the Bankruptcy Court to decide these issues in due course on a proper record.

## CONCLUSION

The Court should deny the Petition.

Respectfully submitted,

*/s/ C. Kevin Marshall*
Noel J. Francisco
C. Kevin Marshall
David S. Torborg
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
ckmarshall@jonesday.com

Gregory M. Gordon
Brad B. Erens
Dan B. Prieto
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201
May 8, 2023                    (214) 220-3939

*Proposed Counsel for LTL Management LLC*

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Local R. 28.3(d) and Local R. 46.1(e), I certify that I, C. Kevin Marshall, am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

/s/ C. Kevin Marshall
C. Kevin Marshall
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3939
ckmarshall@jonesday.com

May 8, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This response complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 7,763 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This response complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the response has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

3. This response complies with the electronic filing requirements of Local R. 31.1(c) because the text of the electronic response is identical to the text of the paper copies and because a virus scanning software was run on the file containing the electronic version of this response and no viruses were detected.

> /s/ C. Kevin Marshall
> C. Kevin Marshall
> JONES DAY
> 51 Louisiana Avenue, N.W.
> Washington, D.C. 20001
> (202) 879-3939
> ckmarshall@jonesday.com

May 8, 2023

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on May 8, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ C. Kevin Marshall*

C. Kevin Marshall

JONES DAY

51 Louisiana Avenue, N.W.

Washington, D.C. 20001

(202) 879-3939

ckmarshall@jonesday.com

May 8, 2023